IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-00449-ZLW-PAC

LUIS BELTRAN,

    Plaintiff(s),

v.

KEVIN CRUTCHER,

    Defendant(s).

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Patricia A. Coan, United States Magistrate Judge

Plaintiff, a state prisoner, brings a 42 U.S.C. §1983 action claiming that defendant Crutcher violated plaintiff's Eighth Amendment rights when Crutcher delayed providing plaintiff medical assistance for approximately four hours on September 28, 2003 after plaintiff suffered a seizure.[1]

This action was referred to the undersigned on May 28, 2004 to conduct pretrial proceedings and to issue recommendations on dispositive motions. The matter before the court is Defendant's Motion for Summary Judgment [filed December 9, 2005]. The motion is fully briefed and the court has determined that oral argument would not be of material assistance.   Plaintiff has been represented by counsel since March 22, 2005.

I.

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings,

---

[1] Plaintiff's §1983 claim against former defendant Dennis McKibben was dismissed on January 14, 2006, along with plaintiff's state law negligence claims.  *See* January 14, 2006 Order Dismissing Claims in Part.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to [the nonmovant's claim]." *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993)(internal citations omitted); *see, also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(holding that the nonmovant has the burden to show that there are genuine issues of material fact to be determined at trial). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir. 1995). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Conclusory allegations will not create a genuine issue of material fact necessitating trial. *White v. York Int'l. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

II.

The following facts are undisputed, or are construed in plaintiff's favor on summary judgment. Plaintiff is incarcerated at the Colorado State Penitentiary ("CSP"), a maximum security/administrative segregation facility. (Deposition of Luis Beltran, MAJ Ex. A, at 15;

COLO.REV.STAT. §17-1-104.3(1))  At approximately 8:20 a.m. on September 27, 2003, CSP staff notified defendant Sgt. Crutcher that plaintiff was on the floor of his cell, and that although bleeding from the mouth, he was responsive.  (MSJ, Ex. C, Incident Report) Crutcher went to plaintiff's cell door to observe plaintiff after directing control center staff to call the medical department.  (Deposition of Kevin Crutcher, MSJ Ex. D, at 35-36)   A nurse arrived at plaintiff's cell five to ten minutes later.  (*Id.* at 36)  Plaintiff approached the cell door and spoke to the nurse.  (*Id.* at 36-37)  Crutcher went back to his duties on the lower tier.  (*Id.*) Crutcher directed his staff to look in on plaintiff each time they entered the day hall to move the inmates (approximately every ten to thirty minutes).  (*Id.* at 29, 37) Staff checked on plaintiff and reported to Crutcher that plaintiff was resting and appeared to be fine.  (*Id.* at 40)

Crutcher looked in on plaintiff three or four times.  (Crutcher Deposition, at 39) The first time Crutcher observed plaintiff after the nurse's visit, plaintiff was lying on his mattress on the floor.  (*Id.* at 38)  Crutcher knew that plaintiff had suffered a seizure once before and that the nurse normally advised an inmate who experienced a seizure to place his  mattress on the floor to prevent the inmate from falling off his cot and hitting his head, in the event of another seizure.  (*Id.* at 27, 38)

When Crutcher saw plaintiff at approximately 10:50 a.m., plaintiff had moved his mattress onto his cot, was lying on his cot with his back to Crutcher, and appeared to be fine.  (Crutcher Deposition, at 39, 41)  A staff member reported to Crutcher at approximately 11:25 a.m. that plaintiff had injured himself.  (*Id.* at 41, 43; MSJ Exs. C, F) Crutcher went to plaintiff's cell and saw that plaintiff was bleeding from the upper portion

of his head.  (Crutcher Deposition,  at 41)  Crutcher directed the control center staff to call medical personnel, reported plaintiff's condition to the shift commander, and then returned to plaintiff's cell.  (*Id.*)  The nurse arrived, looked at plaintiff, and told Crutcher and the shift commander that they needed to remove plaintiff from the cell.  (*Id.*)

An extraction team removed plaintiff from his cell at 12:04 p.m.  (MSJ Ex. E, G) Crutcher was not part of the extraction team[2] and did not see the extraction.  (Crutcher Deposition, at 44) Plaintiff was taken to the medical unit and then transported to the hospital at approximately 12:40 p.m.  (MSJ Exs. E, F)

Defendant Crutcher testified that the procedure in 2003, when an inmate had a medical episode, was for staff to notify the medical department and medical personnel would visit the inmate and determine whether the inmate needed to be extracted from his cell.[3]  (Crutcher deposition, at 27, 29) Staff members were not allowed to individually enter an inmate's cell  for security reasons.  (*Id.* at 27-28)

Plaintiff testified in his deposition that he had a seizure sometime during the morning of September 28, 2003, but he does not know what time the seizure occurred. (Beltran Deposition, at 36)  Plaintiff does not remember who came to his cell that morning and does not recall speaking to a nurse.  (*Id.* at 36-37)  Plaintiff does not recall anything about that morning.  (*Id.* at 36-38)  The facts alleged in plaintiff's complaint are based on information provided to plaintiff from other inmates who claimed to have observed what

---

[2] Pursuant to CSP policy, staff on the pod from which an inmate is extracted cannot participate in the extraction.  (Crutcher Deposition, at 44)

[3] Sometime in 2004, the procedure changed so that staff can make an emergent care entry into an inmate's cell without an extraction team if there is an urgent circumstance and staff do not have a reasonable concern that the inmate might be dangerous.  (Crutcher Deposition, at 27-28)

happened. (*Id.* at 26, 38)  Plaintiff cannot identify any injuries that he suffered as a result of the delay in receiving medical treatment.  (*Id.* at 43, 44)

### III.

Defendant Crutcher asserts the qualified immunity defense in response to plaintiff's Eighth Amendment claim against him in his individual capacity for monetary relief. Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right.  *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted).  If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity.  *Smith*, 339 F.3d at 1211. If the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir. 2001)(internal quotation omitted).

The Eighth Amendment is violated when a prison official acts with "deliberate indifference to [an inmate's] serious medical needs."  *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).  A medical need is sufficiently serious "if it is one that has been diagnosed by

a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)(internal quotation omitted)).

Deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or, that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied his access to medical care. *Estelle,* 429 U.S. at 104-105; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001).

A delay in providing medical treatment is not actionable unless it is occasioned by "deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)(internal citation omitted); *see, also, Sealock*, 218 F.3d at 1210 ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm").  The substantial harm requirement may be satisfied by allegations of a lifelong handicap, permanent injury or loss, or "considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)(citing *Oxendine*, 241 F.3d at 1278).

Plaintiff alleges in his complaint that he had a seizure, fell down and suffered injuries to his face and hands, and that he was in pain for three and a half hours until he was removed from his cell and taken to the medical unit.  Plaintiff admits in his deposition,

however, that he cannot recall anything that happened from the time he suffered a seizure until he woke up in the hospital later that day. Further, plaintiff has not submitted any affidavits from the inmates who allegedly observed what happened to plaintiff that morning.

I assume for purposes of summary judgment that plaintiff had a serious medical need when he was lying on the floor of his cell at approximately 8:20 a.m. bleeding from the mouth. Plaintiff must also show that the delay in providing medical care resulted in substantial harm. *Sealock*, 218 F.3d at 1210. Plaintiff admits that he did not suffer a permanent injury or handicap as a result of the delay, and it is unclear whether he suffered considerable pain, given plaintiff's deposition testimony that he cannot recall anything that happened on the morning of September 27, 2003.

Even if plaintiff's evidence is sufficient to survive summary judgment on the objective prong of the Eighth Amendment inquiry, plaintiff nonetheless has failed to establish the existence of a material factual issue about whether defendant Crutcher intentionally delayed or denied plaintiff access to medical care, knowing that plaintiff was in significant pain or that the delay might worsen plaintiff's condition. *Id.*

The uncontroverted evidence is that defendant Crutcher instructed the control room staff to call the medical unit promptly after receiving notice that plaintiff was lying on the floor of his cell bleeding from his mouth. Crutcher went to plaintiff's cell to observe him and returned to his duties only after the nurse arrived and began talking to plaintiff, who had come to his cell door to speak to her. Crutcher knew that plaintiff may have suffered a seizure and checked on plaintiff three or four times during the next three hours. During that time, plaintiff moved his mattress from his cot to the floor, and then moved the

mattress back to the cot and lay down on it. In addition, other staff checked on plaintiff regularly and reported to Crutcher that plaintiff was resting and appeared to be fine. When Crutcher saw plaintiff at 10:50 a.m., plaintiff was lying on his cot with his back to the cell door. Approximately thirty minutes later, staff reported to Crutcher that plaintiff had injured himself. Crutcher went to plaintiff's cell, saw that plaintiff was bleeding from the upper portion of his head, and told the control room staff to have medical personnel report to plaintiff's cell. Crutcher also advised the shift commander of the situation. The nurse observed plaintiff and advised Crutcher and the shift commander that plaintiff must be removed from his cell. An extraction team removed plaintiff from his cell, took him to the CSP medical unit, and then transported him to the hospital. Crutcher was not part of the extraction team, pursuant to CSP policy.

    I recommend finding that a reasonable jury could not conclude from the evidence of record that Crutcher delayed or denied plaintiff access to medical care. Defendant Crutcher promptly notified a nurse of plaintiff's condition the first time a staff member noticed that plaintiff was bleeding and made sure that a nurse visited plaintiff's cell and communicated with plaintiff before returning to his duties.[4] Crutcher and his staff monitored plaintiff's condition for the next three hours. When staff noticed that plaintiff was bleeding

---

[4]Plaintiff argues that Crutcher's deposition testimony in which he said that plaintiff spoke to the nurse at his cell door is inadmissible hearsay because it is based on what the nurse told Crutcher. Although it is not clear from Crutcher's deposition testimony whether he personally observed plaintiff speaking to the nurse or someone else told him that plaintiff spoke to the nurse through the cell door, that ambiguity does not create a genuine issue of material fact about defendant's liability. Defendant summoned the nurse each time plaintiff was observed bleeding in his cell, made sure that the nurse observed the plaintiff, and monitored the plaintiff's condition in the interim. Defendant reasonably relied on the nurse's decision not to have plaintiff removed from his cell for medical treatment. Moreover, even if Crutcher did not witness the plaintiff talking to the nurse, Crutcher knew that plaintiff was not unconscious because plaintiff moved his mattress to the floor and then back to his cot during the three-hour period Crutcher observed him.

from the head, Crutcher went to plaintiff's cell to observe him and called the nurse again. Crutcher did not have authority to order an inmate extracted from his cell for medical reasons. (Crutcher Deposition, at 29)  Even if plaintiff should have received medical care sooner than he did, the decision to wait was made by the nurse and defendant Crutcher reasonably relied upon her medical judgment.  *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)(recognizing that prison guards are entitled to rely on the opinions and responses of  medical professionals about an inmate's condition); *see, also, Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006)(concluding that prison grievance officer could not be held liable under the Eighth Amendment for deliberate indifference to inmate's serious medical needs where grievance officer investigated plaintiff's complaints about lack of adequate medical care for a hernia  and made sure that medical personnel were monitoring the situation).

Accordingly, defendant Crutcher is entitled to qualified immunity and to summary judgment on plaintiff's Eighth Amendment claim that Crutcher was deliberately indifferent to plaintiff's serious medical needs.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Defendant's Motion for Summary Judgment [filed December 9, 2005] be **GRANTED**.  It is

**FURTHER RECOMMENDED** that this case be **DISMISSED WITH PREJUDICE.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed**

**findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated May 2, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge